UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

BOBBY KOONCE,

                 Petitioner,                           **DECISION AND ORDER**

      -vs-                                         **No. 08-CV-0615(VEB)**

SUSAN A CONNELL,

                 Respondent.

_____

## I.      Introduction

Proceeding *pro se*, Bobby Koonce ("Koonce" or "Petitioner") has filed a petition for a

writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the constitutionality of his state

custody as the result of a judgment of conviction entered against him following a bench trial on

charges of sexual abuse in the first degree (New York Penal Law ("P.L.") § 130.65(3)) and

endangering the welfare of a child (P.L. § 260.10(1)). He was subsequently sentenced as a second

violent felony offender to a five-year determinate term of imprisonment on sexual abuse

conviction, and a one-year definite term on the child endangerment conviction. Both terms were

set to run concurrently with each other. The court also imposed a mandatory five-year period of

post-release supervision.

Petitioner's conviction was unanimously affirmed on March 16, 2007. *People v. Koonce*,

38 A.D.3d 1286 (App. Div. 4th Dept. 2007). Leave to appeal was denied on July 3, 2007. *People

v. Koonce*, 9 N.Y.3d 866 (N.Y. 2007).

This timely habeas petition followed in which Koonce raises the following grounds for

habeas relief: (1) denial of due process because the conviction was not based upon legally

sufficient evidence and (2) denial of the Sixth Amendment right to a speedy trial. Respondent

answered the petition, arguing that Koonce's claims do not warrant habeas relief under 28 U.S.C.

§ 2254(d)(1).

The parties have consented to disposition of this matter by a magistrate judge pursuant to

28 U.S.C. § 636(c)(1).

For the reasons that follow, the petition is dismissed.

## II.    Standard of Review Under 28 U.S.C. § 2254, as Amended by AEDPA

When a petitioner "in custody pursuant to the judgment of a State court" seeks habeas

review of "any claim that was adjudicated on the merits in State court," a habeas writ may issue

only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2). A state court decision is "contrary to" federal law as determined by

the Supreme Court if either (a) "the state court arrives at a conclusion opposite to that reached by

the Supreme Court on a question of law," or (b) "the state court considers facts that are materially

indistinguishable from a relevant Supreme Court case and arrives at an opposite result." *Williams*

*v. Taylor*, 529 U.S. 362, 405 (2000)).  An "unreasonable application" of clearly established

federal law occurs if (a) "'the state court identifies the correct governing legal rules from the

[Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's

case,'" or (b) the "state court invokes a Supreme Court case and unreasonably extends its legal

principle to a new context where it should not apply, or fails to extend it where it should apply."

*Williams*, 529 U.S. at 407.

Factual findings by a state court are entitled to a presumption of correctness, 28 U.S.C. § 2254(e)(1), which the habeas applicant bears the burden of overcoming by clear and convincing evidence, *id.*

III. **Discussion**

A. **Ground One: Insufficiency of the Evidence**

1. **Applicable Legal Principles**

The law governing habeas relief from a state conviction based on insufficiency of evidence is well established. A petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court of the State of N.Y.*, 109 F.3d 836, 840 (2d Cir.1997).  A habeas court will uphold a state criminal conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original)); *see also Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir.2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial."); *Policano v. Herbert*, 430 F.3d 82, 86 (2d Cir.2005) (" '[I]n a challenge to a state criminal conviction brought under 28 U.S.C. § 2554[,] . . . the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.' ") (quoting *Jackson*, 443 U.S. at 324, 99 S.Ct. 2781).

Even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir.1994). Thus, a reviewing court may not grant relief on a sufficiency claim unless the record is "so totally devoid of evidentiary support that a due process issue is raised."  *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir.1994).

A habeas petitioner's contention that a witness' testimony was unworthy of belief is not reviewable in habeas proceedings since credibility determinations are the province of the jury. *See Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) (dismissing habeas claim because "assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on appeal; stating that it must defer to the jury's assessments of both of these issues).

## 2.      Analysis

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999). To be guilty of first degree sexual abuse under the Penal Law section charged in the indictment, the person must have subjected someone who is less than eleven years old to sexual contact. N.Y. PENAL LAW § 130.65(3).  A person is guilty of endangering the welfare of a child when he "knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his or her life or health . . . ." N.Y. PENAL LAW § 260.20(1).

Nine-year-old M.P. testified that on the evening of June 24, 2004, she left her house with her father and Petitioner, her grandfather. At that time, she was eight-years-old. Petitioner, who was driving, dropped his son off at a friend's house and went to another house, leaving M.P. in the car by herself. When Petitioner returned to the car, M.P. testified, he gave her a cigarette and told her to smoke it. Petitioner then put his finger on M.P.'s vagina and told her to take off her pants. M.P. testified that Petitioner inserted his finger into her vagina and moved it around, remarking that it was "fun being bad." Petitioner then went to pick up his son and they proceeded home. (T.16-23, 28, 31, 42, 47; numbers in parentheses preceded by "T." refer to pages of the trial transcript).

The next day, M.P. told her grandmother and mother what Petitioner had done. (T.24). M.P. gave her mother the second cigarette which Petitioner had given her the night before. (T.29). The cigarette was the same brand that Petitioner smoked. (T.85-90).

M.P.'s father testified that he was with Petitioner and his daughter in Petitioner's car on the night of June 24, 2004. His father dropped off him at a friend's house where he had a couple of beers. Later, when Petitioner picked him up, it seemed to M.P.'s father that his daughter's mood was different–she appeared to be in lower spirits than usual. That evening, the victim woke up screaming, waking her parents. (T.55-61). M.P.'s mother said that the victim had had a nightmare and was talking about "private parts".

On direct appeal, the Appellate Division held that "[c]ontrary to defendant's contention, the verdict is not against the weight of the evidence. 'The credibility determinations of [Supreme Court] are entitled to great deference . . . , and there is no basis to conclude that the court failed to give the evidence the weight that it should be accorded[.]'" *People v. Koonce*, 38 A.D.3d at

1286-87 (internal citation and quotation omitted)).  Construing Koonce's weight-of-the-evidence claim broadly as a constitutional claim attacking the legal sufficiency of the evidence, it is without merit even under a *de novo*, pre-AEDPA standard of review.

Koonce's argument is based solely upon alleged inconsistencies in the witnesses' testimony and an inconsistency between the witness' version of Petitioner's conduct and the narrative in one of the medical records. The only inconsistency between the victim's Grand Jury testimony and trial testimony is the number of cigarettes she smoked on the night Petitioner molested her; she told the Grand Jury she smoked two cigarettes and trial she testified that she smoked one cigarette. This is a trifling matter that does not meaningfully call into question the victim's credibility.  As Respondent argues, on the essential point regarding Petitioner's conduct on the night she was alone in his car–that is, his insertion of his finger into her vagina–she was entirely consistent in her testimony.

With regard to the hospital record wherein it stated that Petitioner made the victim "pull down pants and panties 3 times and he touched her vagina with his finger each time," the victim was never asked about this statement and it is possible that the person who wrote that part of the record did not accurately record the victim's narrative. Importantly, the victim's testimony at trial is corroborated by another portion of the medical records which quotes her as saying, "[M]y grandfather took me for a ride yesterday in his car and told me to pull my pants down. He stuck his finger where I pee and then gave me two cigarettes."  That part of the medical records is completely consistent with the victim's trial testimony that Petitioner put his finger on M.P.'s vagina, told her to take off her pants, inserted his finger into her vagina and moved it around, and gave her two cigarettes, one of which she smoked.

-6-

Koonce points to an alleged inconsistency regarding whether the victim had smoked cigarettes in the past or not, arguing that the mother testified that she previously had caught the victim smoking, while the victim testified that she had not smoked before Petitioner gave her the cigarettes.  The mother's actual testimony was that she had "heard" that her daughter had smoked a cigarette in the past. (T.90). Even if there was an inconsistency, it was regarding a minor matter that did not undermine the overall credibility of the victim's story.

Koonce's argument that the victim's story is incredible because she delayed in telling her parents about the sexual abuse is without merit. Under the circumstances, the victim did make a prompt outcry, informing her mother and grandmother about the incident the day after it happened.

The victim's parents provided testimony about the victim's unusual behavior which corroborated that she was sexually assaulted: First, her father described her mood as uncharacteristically subdued immediately after the incident. Second, her mother recounted that the victim had a nightmare from which she woke up screaming and talking about "private parts" on the night of the incident.

Petitioner's claim that the victim had fabricated the incident to cover up the fact that she was smoking is unpersuasive. As Respondent points out, there would be no reason for the victim to have handed her mother a cigarette when telling her about the abuse if that was her motive.

In sum, Koonce's arguments in his habeas petition repeat arguments attacking the witnesses' credibility made to the trier-of-fact, who was in the best position to observe the witnesses' demeanor and assess their veracity. It is beyond cavil that a reviewing court must defer to the trier-of-fact's assessments of witness credibility. *E.g.*, *United States v. Vasquez*, 267

F.3d 79 (2d Cir. 2001) ( "The jury chose to believe the witnesses' testimony despite any inconsistencies. We will defer to the jury's assessment of credibility." ) (citing *United States v. Payton*, 159 F.3d 49, 56 (2d Cir.1998) ("Where there is conflicting testimony at trial, we defer to the jury's resolution of the witnesses' credibility. . . .").

Drawing all reasonable evidentiary inferences in favor of the prosecution, and deferring the trier-of-fact's resolution on the issues of witness credibility, there was more than ample evidence for a rational fact-finder to conclude that the prosecution clearly met its burden of proving Petitioner's guilt beyond a reasonable doubt on the essential elements of the crimes charged.  *See*, *e.g.*, *People v. Warner*,  69 A.D.3d 1052, 1053-54, 893 N.Y.S.2d 359, 360 (App. Div. 3d Dept. 2010) (finding conviction on charge of first degree sexual abuse against a child less than eleven years old and endangering the welfare of a child where the victim testified to several incidents of abuse at the hands of defendant (e.g., defendant unzipped her skirt and touched her vagina), and that testimony, if credited, amply supported the present convictions; [w]hile there were some inconsistencies between" the victim's "testimony and her prior statements, defendant fully developed the argument before the jury that these inconsistencies rendered [the] victim . . . unworthy of belief").

For the foregoing reasons, I find that habeas relief is not warranted on Ground One.

**B.      Ground Two: Violation of the Sixth Amendment Right to a Speedy Trial**

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." U.S. Const. amend. VI. The Supreme Court has identified four factors that a court should consider in passing on a petitioner's claims that pretrial delays in state court denied him his Sixth Amendment right to a speedy trial: "length of delay, the

reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."
*Barker v. Wingo*, 407 U.S. 514, 530 (1972); *accord  Doggett v. United States*, 505 U.S. 647
(1992). No one factor is "necessary or sufficient"; rather, they all "must be considered together
with such other circumstances as may be relevant."407 U.S. at 532.

The New York Court of Appeals has set forth five factors to ascertain if a defendant's
Sixth Amendment right to a Speedy Trial has been denied: "(1) the extent of the delay; (2) the
reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an
extended period of pretrial incarceration; and (5) whether or not there is any indication that the
defense has been impaired by reason of the delay." *People v. Taranovich*, 37 N.Y.2d 442, 445
(N.Y.1975) ("A one-year delay between the alleged occurrence of a crime and an indictment for a
class C felony, even when it results from prosecutorial inattention, in and of itself does not entitle
a defendant to a dismissal of the indictment where there is no lengthy pretrial incarceration and
no apparent impairment of his defense caused by the delay.").

The *Taranovich* factors essentially mirror the four-part inquiry outlined by the Supreme
Court in *Barker v. Wingo,* 407 U.S. at 530 (i.e., "[l]ength of delay, the reason for the delay, the
defendant's assertion of his right, and prejudice to the defendant") to determine whether a
defendant's speedy trial right had been violated by prosecutorial delay. *See also Frazier v.
Czarnetsky*, 439 F. Supp. 735, 737 (S.D.N.Y. 1977) ("The *Taranovich* factors, . . . , are virtually
identical to the four factors that  *Barker v. Wingo* . . . establishes as dispositive of Sixth
Amendment claims of undue delay.") (citations omitted). Like the Supreme Court in *Barker*, the
Court of Appeals noted in *Taranovich* that "no one factor . . . is necessarily decisive or
determinative of the speedy trial claim, but rather the particular case must be considered in light

of all the factors as they apply to it." 37 N.Y.2d at 445.

 After weighing the *Taranovich* factors in conjunction with the circumstances of this case, the trial court found that Koonce was not denied his right to a speedy trial. The trial court found that the prosecution had not contributed to the delay, the delay was not excessive given the seriousness of the charges, and there was no indication that Petitioner's defense had been prejudiced by the delay. On direct appeal, the Appellate Division found that the trial court had "properly denied defendant's motion to dismiss the indictment [on speedy trial grounds] . . . based upon its balancing of the appropriate factors." *People v. Koonce*,  38 A.D.3d at 1287 (citing, *inter alia*, *Taranovich*, 37 N.Y.3d at 445). As discussed below, the state courts' rulings did not incorrectly apply the *Taranovich* factors and, more importantly, were neither contrary to *Barker,* nor an unreasonable application of the *Barker* factors.

 With regard to the length of the delay, both the Supreme Court and the Second Circuit have found that no constitutional speedy trial violation occurred in cases in which the period between arrest and trial was even longer than the ten months at issue here. *E.g.*, *Barker v. Wingo*, 407 U.S. at 533-34 (over 5 years); *David v Kelly*, 316 F.3d 125 (2d Cir 2003), cert denied 540 U.S. 958 (over 3 years); *Flowers v. Warden, Connecticut Corr. Institution, Somers*, 853 F.2d 131, 133 (2d Cir.1988) ("As to the first factor, length of the delay, we note first that the 17-month delay here, while lengthy, is nevertheless considerably shorter than those in other cases where we have found no speedy trial violation.") (citing *United States v. McGrath*, 622 F.2d 36 (2d Cir.1980) (24 months)*;  Rayborn v. Scully*, 858 F.2d 84, 89 (2d Cir.1988) (over 7 years); *United States v. Lane*, 561 F.2d 1075, 1078 (2d Cir.1977) ("The delay here was quite lengthy approximately 58 months or just under five years but nevertheless was shorter than that in other

cases in which no Sixth Amendment violation has been found."); *United States v. Infanti*, 474 F.2d 522, 527 (2d Cir.1973) ("[The length of time from arrest to indictment was 21 months and from arrest to trial 28 months, neither extraordinary."). Thus, the pre-trial delay of less than ten months does not constitute a per se violation of Koonce's Sixth Amendment right to a speedy trial.

With regard to the second *Barker* factor, Koonce has not established that the delay resulted from "deliberate procrastination," "negligent inaction," or an "attempt to obtain a tactical advantage" on the part of the district attorney's office. On the record before it, the Court finds no evidence of a "deliberate attempt to delay the trial in order to hamper the defense," *Barker v. Wingo*, 407 U.S. at 531, on the part of the state court prosecutor. It appears that the defense's motion practice was the cause of the delay until September 7, 2004. The delay until April 19, 2005, of the trial was due to the trial judge's recusal from the case.  This factor therefore does not weigh in petitioner's favor.

The third *Barker v. Wingo* factor takes into account the defendant's responsibility to assert his right to a speedy trial. *Barker*, 407 U.S. at 531. Here, although this factor appears to weigh in Koonce's favor, it is not, standing alone, sufficient to overcome the remaining factors which weigh in the prosecution's favor.

The final *Barker* factor is whether prejudice inured to the defendant as a result of the delay. *See Barker*, 407 U.S. at 532. Prejudice should be evaluated in the light of the interests which the Sixth Amendment was designed to protect-preventing oppressive pretrial incarceration, minimizing the accused's anxiety and concern, and limiting the possibility that the defense will be impaired. *Id*.  The Court acknowledges that Koonce was incarcerated. However,

the charges were very serious and involved one of his family members and, as noted above, the

length of the delay was not so long as to warrant a finding that the pretrial delay was objectively

oppressive. Furthermore, as noted above, there is no indication that Koonce's defense was

impaired in any way by the less than 10-month pre-trial delay.

Because the state courts' rulings did not incorrectly apply the *Taranovich* factors and,

moreover, were neither contrary to *Barker,* nor an unreasonable application of *Barker*, Ground

Two does not provide a basis for habeas relief.

**IV.      Conclusion**

Bobby Koonce's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is

denied, and the petition is dismissed.  Because Koonce has failed to make a substantial showing

of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C.

§ 2253(c)(2).

**IT IS SO ORDERED.**

/s/  *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:      April 1, 2011
            Rochester, New York